UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVERBROOK HOLDINGS, LLC,

              Plaintiff,

v.

TIMS REFIREMENT, LLC and
TIMOTHY SIMPSON,

              Defendants.

_____/

Case No. 2:25-cv-13445

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
AS MOOT MOTION TO DISMISS [6], GRANTING
MOTION TO STAY [13], AND ADMINISTRATIVELY CLOSING THE CASE**

Tim's Refirement, LLC sold most of a Michigan printing company to Everbrook Holdings, LLC. But Tim's allegedly breached the terms of the purchase agreement, and Everbrook sued Tim's and the trustee of its sole member, the Timothy M. Simpson Trust. In the purchase agreement, the parties agreed that Michigan state and federal courts would have exclusive jurisdiction over all disputes related to the sale, except for one—disputes over the closing working capital calculation. For that narrow issue, the parties agreed to submit any dispute to "arbitration" by an independent accountant, whose decision would be "final and binding." ECF No. 12-1, PageID.458.

Relying on the arbitration clause, Defendants moved to stay the case pursuant to § 3 of the Federal Arbitration Act (FAA). ECF No. 13. Because the closing working capital of the printing company is at issue in the instant case, and because the issue

1

may be referred to arbitration by the agreement of the parties, the Court will grant the motion to stay. And because Plaintiff amended its complaint, it will also deny as moot Defendants' motion to dismiss, ECF No. 6.

## BACKGROUND

Defendant Tim's Refirement, LLC previously owned DiggyPod, a Michigan printing company. ECF No. 12, PageID.407. Tim's later sold 90% of its membership interests in Diggy Pod to Plaintiff Everbrook Holdings, LLC. *Id.* at PageID.403. The Timothy M. Simpson Trust is the sole member of Tim's Refirement, LLC. *Id.* at PageID.407.

The relationship between the parties soon broke down. In December 2025, Everbrook Holdings, LLC sued Tims Refirement, LLC and Timothy Simpson, ECF No. 8, and alleged that they "failed to deliver the promised working capital, concealed hundreds of thousands of dollars in liabilities, and refused to indemnify Everbrook for the resulting losses." *Id.* at PageID.104. Plaintiff alleged that Defendants owe $451,386.95 in working capital shortfall pursuant to the agreement, that Defendants breached closing deliverables and other obligations because they failed to transfer banking control and other accounts to Plaintiff, and that Plaintiff should be indemnified for losses stemming from breaches of representations and warranties. *Id.* at 104, 114. Defendants disputed the $451,386.95 number and, instead, argued that the working capital number is closer to $133,000. ECF No. 15, PageID.521.

The purchase agreement for DiggyPod contained two provisions about dispute resolution that are relevant here. First, a forum selection clause in Section 10.8 of the

agreement, ECF No. 12-1, PageID.468, and second, an arbitration clause in Section 2.4 of the agreement, ECF No. 12-1, PageID.457–458.

Since the filing of the complaint, there has been a flurry of docket activity: a motion to dismiss, an amended complaint, a motion for partial summary judgment, an answer to the amended complaint with a counterclaim, and a motion to dismiss the counterclaim. ECF Nos. 6, 8, 11, 12, 21. Defendants also moved to stay the case under 9 U.S.C. § 3 of the Federal Arbitration Act. ECF No. 13. Plaintiff opposed the motion. ECF No. 17.

## LEGAL STANDARD

The Federal Arbitration Act governs written arbitration agreements. 9 U.S.C. §§ 1–301. It provides that "upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Arbitration agreements "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." *Id.* § 2. The FAA encompasses "a liberal federal policy favoring arbitration agreements" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (collecting cases).

3

## DISCUSSION

To resolve a motion to stay proceedings and compel arbitration under the FAA, the Court must determine: (1) the existence of an arbitration agreement; (2) the scope of any agreement; (3) whether Congress intended for any federal claims to be non-arbitrable; and (4) whether to stay the proceedings if some claims are not arbitrable. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (quoting *Stout*, 228 F.3d at 714).

Here, each factor confirms that the dispute surrounding the correct amount of final closing working capital is subject to arbitration.

### I.     Agreement to Arbitrate

Before the court can send a case to arbitration, it must confirm whether a valid agreement to arbitrate exists under state law. 9 U.S.C. § 2; *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 391 (6th Cir. 2008). Here, Defendants did not contest the validity of the agreement to arbitrate in Section 2.4. *See* ECF No. 12-1, PageID.457–458; *see generally* ECF No. 17.

### II.    Scope of Arbitration Agreement

There are two provisions of the purchase agreement at issue. First, Section 10.8 of the agreement, "Submission to Jurisdiction," states that:

> Each of the parties irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement brought by any party or its successors or assigns against the other party shall be brought and determined in any Michigan state or federal court, and each of the parties hereby irrevocably submits to the exclusive jurisdiction of the aforesaid courts for itself and with respect to its property, generally and unconditionally, with regard to any such action or proceeding arising out

of or relating to this Agreement and the transactions contemplated hereby.

ECF No. 12-1, PageID.478. Second, Section 2.4 of the agreement, "Post-Closing Adjustment of Working Capital," states that:

> (a) Within one-hundred twenty (120) days after the Closing Date, the Buyer shall prepare and deliver to the Seller a calculation (the "**Final Closing Working Capital Statement**") of the actual Working Capital as of the Closing Date (the "**Closing Working Capital**"). . . .

> (b) The Seller shall have fifteen (15) days from the receipt of the Final Closing Working Capital Statement calculation to review and object to the calculation. Any objections must be made in writing and include a detailed explanation of the disagreement. If the Seller and Buyer are unable to resolve any disputes regarding the Closing Working Capital calculation within thirty (30) days after the Seller's objection, the dispute shall be submitted to an independent accounting firm mutually agreed upon by the parties (the "**Independent Accountant**"). The decision of the Independent Accounting shall be final and binding. The costs for such arbitration shall be borne equally by both parties.

ECF No. 12-1, PageID.457–458.

Defendants moved to stay the case pending arbitration because Plaintiff alleged that Defendants failed to pay a post-closing adjustment to the final closing working capital estimate the parties used at closing. ECF No. 14, PageID.510. In response, Plaintiff argued that the arbitration clause is a "narrow arithmetic carve-out that does not override the broad jurisdictional mandate of Section 10.8." ECF No. 17, PageID.606. Plaintiff believes the case is not subject to arbitration because it is not about an *arithmetic* calculation of the closing working capital, but about failure to deliver closing cash "in violation of §§ 2.2 and 5.2 of" the agreement, failure to transfer bank account control, concealment of liabilities, refusal to indemnify, and Defendants' interference with Plaintiff's control of company systems and accounts.

*Id.* at PageID.610. In other words, Plaintiff argued that "[b]ecause there is no dispute over arithmetic, § 2.4 is not triggered." *Id.*

The Court agrees with Plaintiff that not all disputes in the case concern the correct calculation of the closing working capital amount. But one of Plaintiff's allegations, and perhaps the main dispute, centers on the correct amount of final closing working capital that is owed to Plaintiff. ECF No. 8, PageID.104. And despite Plaintiff's creative attempt to narrow the arbitration clause into a nullity, Section 2.4 is clear: a dispute about the final closing working capital calculation must be submitted to an independent accountant who will issue a "final and binding" decision. *See* ECF No. 12-1, PageID.458.

The text of the agreement requires an independent accounting firm to "resolve any disputes regarding the Closing Working Capital calculation." *Id.* at PageID.457. And Plaintiff admits that there is a dispute about the correct amount. *See* ECF No. 8, PageID.114–15 (Plaintiff alleging that it calculated a Closing Working Capital of negative $338,387 and that Defendants calculated that at least $133,000 was due toward to working-capital shortfall); ECF No. 15, PageID.52. Though the Court has exclusive jurisdiction over every other dispute related to the closing agreement, the parties agreed that one particular issue must be decided through arbitration. And the broader jurisdiction clause cannot erase the more specific arbitration clause. *See United States v. Riccardi*, 989 F.3d 476, 482 (6th Cir. 2021) (explaining that "[t]he specific governs the general in the interpretation of a legal text") (citing *RadLax Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)).

6

Plaintiff' argued that the agreement does not permit the accountant to determine what inputs are used in the calculation— only to add or subtract numbers. But that effort is misguided. *See, e.g., Shy v. Navistar Int'l Corp.*, 781 F.3d 820, 827 (6th Cir. 2015).

As an initial matter, Plaintiff did not cite any justification for its conclusion that the referral to the accountant must only contain simple arithmetic disputes. To the contrary, a necessary part of any "calculation" requires determining which numbers are included and which are not. And when parties disagree on whether something is correctly calculated, especially in accounting, the dispute will often be regarding whether certain categories of numbers should or should not be included. The text of the agreement is clear: "*any* disputes regarding the Closing Working Capital calculation" must be submitted to an independent accountant. ECF No. 12-1, PageID.457 (emphasis added). Absent any language constraining the provision to only simple addition and subtraction, the Court will not constrict the plain meaning of "any dispute regarding the . . . calculation" to include only arithmetic disputes.

Defendant cited *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388 (6th Cir. 2008) in support of its motion to stay. And Plaintiff did not address the case in its response brief, nor did it rely on any caselaw as to why the specific provision here requires the Court to determine the correct final closing working capital amount. *JPD* involved a similar clause requiring disputes regarding the "calculation" of earnings to be resolved by an "Accounting Referee." *Id.* at 391. The Sixth Circuit, reversing the district court, held that because the dispute centered around the purchase price

payment, and more specifically, the EBITA calculation, it was within the scope of the arbitration agreement. *Id.* Relevant here, the Sixth Circuit rejected a similar argument that because the claims do not center on the math, arbitration is inappropriate. *Id.* at 391. While the provision there was similar to the provision here, it contained an important difference: the arbitration provision covered "not only disputes over Chronimed's EBITDA calculation, but also 'all issues having a bearing on such dispute.'" *Id.*

Even though *JPD* contained a broader clause than the one here, the Court will still follow course. Like *JPD*, the agreement here requires the parties to arbitrate disputes regarding the final closing working capital calculation. But unlike *JPD*, the entire dispute here does not appear to concern only the working capital adjustment. There are other disputes here that the arbitration provision does not cover that a catch-all provision may have.

Furthermore, the Court does not agree with Plaintiff that the forum selection clause and the arbitration clause are in conflict, or that including more than simple addition and subtraction would thwart the intention of the parties to litigate disputes in court. Rather, reading the sections together suggests that "the parties contemplated the possibility of litigation related to issues outside the scope of the [arbitration provision]," especially since the parties are bound by obligations other than the working capital calculation. *Pureworks, Inc. v. Unique Software Solutions, Inc.*, 554 F. App'x 376, 379 (6th Cir. 2014).

8

Even if the text was unclear, the Court cannot say with "assurance" that the arbitration clause here does not cover the parties' dispute over the final closing working capital calculation. *See JPD*, 539 F.3d at 391 (citation omitted). The Court must resolve any ambiguity of arbitration in favor of sending the dispute to arbitration. *NCR Corp. v. Korala Assocs.*, 512 F.3d 807, 813 (6th Cir. 2008). Accordingly, the parties' dispute over the correct calculation is subject to arbitration with an independent accountant in accordance with the agreement.

To be sure, the Court agrees with Plaintiff that not all disputes are within the scope of the arbitration provision. The Court will therefore only stay the case so the parties may arbitrate regarding the correct final closing working capital calculation. The independent accountant may decide both how the number is calculated as well as the correct inputs for such a calculation. Other disputes and/or alleged breaches of contract, like failure to turn over certain accounts or interference with the company's operations are not proper for decision by the accountant.

III.   Congressional Intent

Finally, there is no indication that Congress intended to preclude the arbitration of disputes over the calculation of the Working Capital. And neither party addressed the issue. The Court thus finds no congressional intent for Plaintiff's claims regarding the Working Capital adjustment be non-arbitrable.

IV.   Stay of the Proceedings

Last, the Court will stay the litigation pending the outcome of arbitration and administratively close the case. "When a district court finds that a lawsuit involves

9

an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Because the Court already determined that the arbitration provision is valid, enforceable, and applicable to part of the dispute, the Court will stay and administratively close the case in accordance with 9 U.S.C. § 3 pending the outcome of arbitration.

### CONCLUSION

Following the conclusion of arbitration, the parties must inform the Court of the outcome and move to reopen the case if they chose. The Court will likely direct the parties to mediate any remaining disputes.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to stay [13] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Court will **DENY AS MOOT** Defendants' motion to dismiss Timothy Simpson in his personal capacity [6].

**IT IS FURTHER ORDERED** that the case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending resolution of the arbitration.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: July 6, 2026

10